UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ERIC HOOFMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:18-CV-2056-SPM |
| | ) |
| COUNTRY CLUB PLACE LLC, et al. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant United States of America's Motion to Dismiss. (Doc. 20). All parties who have been served have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).[1] For the following reasons, the motion will be granted, Plaintiff's claims against the United States of America will be dismissed, and Plaintiff's remaining state-law claims will be remanded to state court pursuant to 28 U.S.C. § 1367(c)(3) because the Court declines to exercise supplemental jurisdiction over those claims.

### I. BACKGROUND

This action was originally filed in the Circuit Court of St. Charles County, Missouri, by Plaintiff Eric Hoofman. The defendants named in the First Amended Petition are Country Club Place LLC; Country Place, LLC; Highway 94 Apartment Management, LLC (collectively, the "Apartment Defendants"); Jose Steers, an employee of the Apartment Defendants; and the United States of America. The case was removed to this Court on December 10, 2018, pursuant to 28 U.S.C. § 1442(a), based on the presence of the United States as a defendant. (Doc. 1-3).

---

[1] There is one unserved defendant, Jose Steers. Plaintiff has thus far been unable to locate Mr. Steers. Plaintiff has requested more time to find and serve Mr. Steers.

1

In his First Amended Petition, Plaintiff Eric Hoofman alleges the following. The Country Club Place Apartments (the "Apartments") consist of 40 or more multi-unit buildings set on 40 acres of land in St. Charles. At the times relevant to this lawsuit, Plaintiff rented a unit in the Apartments ("Plaintiff's Unit"), located on Cherry Hills Lane. Defendant Country Club Place, LLC and Defendant Country Place, LLC own and/or operate the Apartments. Defendant Highway 94 Apartment Management, LLC manages the Apartments, including the grounds and roads therein. In order to get to Plaintiff's Unit, one would travel from Burning Tree Lane to Pleasant Valley Drive to Cherry Hills Lane.

Plaintiff's mailbox is located just off of Pleasant Valley Drive, in an area containing mailboxes for more than 250 individual units at the Apartments (the "Pleasant Valley Mailboxes."). Prior to 2015, individual mailboxes at the Apartments were located in breezeways within each individual building at the Apartments. In 2015, the mailboxes were moved to their Pleasant Valley location, either through a decision of the United States or a decision of the Apartment Defendants. There are no sidewalks on either Cherry Hills Lane or Pleasant Valley Drive. The public can freely travel on Pleasant Valley Drive, and there are no signs warning or mentioning that the road is shared with pedestrians. In order to get to Plaintiff's mailbox on foot, Plaintiff must walk in the street.

On or about January 21, 2016, Plaintiff left his apartment to get his mail. There was snow on the grass, but the roads were clear. While walking to retrieve his mail, Plaintiff was struck by a vehicle driven by Jose Steers on Pleasant Valley Drive. Plaintiff was seriously injured in the accident. Defendant Steers fled the scene and was eventually arrested by the police.

Plaintiff alleges that Defendants were responsible for selecting a safe location for the mailboxes but chose to move the mailboxes to an unsafe location. Plaintiff alleges that Defendants knew that the new location increased the risk that a pedestrian could be struck by a

vehicle. Plaintiff also alleges that that Defendants were responsible for constructing a sidewalk on Pleasant Valley Drive but chose not to do so.

Plaintiff asserts four claims. In Count I, Plaintiff asserts a negligence claim against the Apartment Defendants and the United States, based on these Defendants' failing to construct a sidewalk on Pleasant Valley Drive; failing to provide a safe route for Plaintiff to get his mail; failing to place Plaintiff's mailbox and the Pleasant Valley Mailboxes in a safe location; moving Plaintiff's mailbox to an unsafe location; failing to maintain a safe roadway; and failing to update their facilities to provide safe means of traveling by foot in the Apartments. In Count II, Plaintiff asserts a premises liability claim against the Apartment Defendants and the United States. Plaintiff alleges that the Apartment Defendants owned the Apartments and maintained the property, roads, and mailboxes in the Apartment. In the alternative, Plaintiff alleges that Defendant United States maintained the location of the mailboxes and selected their location. Plaintiff further alleges that due to the lack of a sidewalk or safe route to the mailboxes, the property was not reasonably safe. In Count III, Plaintiff asserts a negligence claim against the Apartment Defendants and Jose Steers, alleging that Defendant Steers was acting in the course and scope of his employment and was negligent in his driving. In Count IV,[2] Plaintiff asserts a negligent hiring and retention claim against the Apartment Defendants based on their hiring and retention of Defendant Steers.

In the instant motion, Defendant United States of America moves to dismiss the claims against it for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1) and the doctrine of sovereign immunity.

**II.    LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action based on lack of subject matter jurisdiction. The Eighth Circuit has held that "[i]n deciding a

motion under Rule 12(b)(1), the district court must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual attack—where it may consider matters outside the pleadings." *Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018) (citing *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990)). *See also Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018); *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993); *C.S. ex rel. Scott v. Mo. State Bd. of Educ.*, 656 F. Supp. 2d 1007, 1011 (E.D. Mo. 2009). Here, Defendant United States' motion is based entirely on the face of the pleadings, so the Court construes it as a facial challenge. In evaluating a facial challenge, "the court restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015) (quoting *Osborn*, 918 F.2d at 729 n. 6). The court must accept as true all of the factual allegations in the complaint, but it need not accept legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss for lack of subject matter jurisdiction, the party asserting jurisdiction has the burden of establishing that subject matter jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

### III. DISCUSSION

#### A. Defendant United States' Motion to Dismiss the Claims Against It

In the instant motion, Defendant United States argues that this Court lacks subject matter jurisdiction over it under the doctrine of sovereign immunity. More specifically, Defendant United States argues that the Federal Tort Claims Act's discretionary function exception applies to Plaintiff's claims against the United States.

Under the doctrine of sovereign immunity, the United States and its agencies are immune from suit unless sovereign immunity has been waived. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475

---

[2] Count IV is mis-numbered in the First Amended Complaint as a second "Count III."

(1994). "Sovereign immunity is jurisdictional in nature." *Id.* "'Congress waived the sovereign immunity of the United States by enacting the [Federal Tort Claims Act], under which the federal government is liable for certain torts its agents commit in the course of their employment." *Riley v. United States*, 486 F.3d 1030, 1032 (8th Cir. 2007) (quoting *C.R.S. by D.B.S. v. United States*, 11 F.3d 791, 795 (8th Cir. 1993); 28 U.S.C. § 2674; & 28 U.S.C. § 1346(b)). *See also Croyle v. United States*, 908 F.3d 377, 381 (8th Cir. 2018) ("The FTCA waives the Government's sovereign immunity for some tort claims, authorizing private suits for negligence of Government agents."). Under the FTCA, "[t]he United States [is] liable . . . in the same manner and to the same extent as a private individual under like circumstances, but [is not] liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. *See also* 28 U.S.C. § 1346(b)(1) ("Subject to the provisions of chapter 171 of this title, the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.").

The waiver of sovereign immunity provided in the FTCA is subject to several exceptions. *Croyle*, 908 F.3d at 381. Defendant United States contends that the "discretionary function exception" described in 28 U.S.C. § 2680(a) applies to Plaintiff's claims in this case, such that sovereign immunity has not been waived. Under that provision, the FTCA's waiver of sovereign immunity does not apply to

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or **based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the**

5

**part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.**

28 U.S.C. § 2680(a) (emphasis added). "If the Government's conduct is within the discretionary function exception, 'the federal court lacks subject matter jurisdiction.'" *Croyle*, 908 F.3d at 381 (quoting *Hinsley v. Standing Rock Child Protective Servs.*, 516 F.3d 668, 672 (8th Cir. 2008).

The Supreme Court has established a two-part test for determining whether the discretionary function applies. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). *Accord Croyle*, 908 F.3d at 381; *Riley v. United States*, 486 F.3d 1030, 1032 (8th Cir. 2007)). "First, the conduct at issue must be discretionary, involving 'an element of judgment or choice.'" *Riley*, 486 F.3d at 1032 (quoting *Berkovitz*, 486 U.S. at 536)). "If a federal statute, regulation, or policy mandates a particular action, the discretionary function exception will not apply." *Croyle*, 908 F.3d at 381 (citing *Berkovitz*, 486 U.S. at 536). "If, on the other hand, no mandate exists, the action is considered a product of judgment or choice and the first step is satisfied." *Hinsley v. Standing Rock Child Protective Servs.*, 516 F.3d 668, 673 (8th Cir. 2008) (citing *Dykstra v. U.S. Bureau of Prisons*, 140 F.3d 791, 795 (8th Cir. 1998)).

Second, "the judgment or choice must 'the kind that the discretionary function exception was designed to shield.'" *Croyle*, 908 F.3d at 381 (citing *Berkovitz*, 486 U.S. at 536). "Because the exception's purpose is to prevent 'judicial second-guessing' of government decisions based on public policy considerations, it protects only those judgments 'grounded in social, economic, and political policy.'" *C.R.S. by D.B.S. v. United States*, 11 F.3d 791, 796 (8th Cir. 1993) (quoting *United States v. v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). *Accord Riley*, 486 F.3d at 1032. For this prong to be satisfied, "[t]he judgment or decision need only be susceptible to policy analysis, regardless of whether social, economic, or political policy was ever actually taken into account . . ." *Demery v. U.S. Dep't of Interior*, 357 F.3d 830, 833 (8th Cir. 2004). Moreover, the Supreme Court has emphasized that

protected "[d]iscretionary conduct is not confined to the policy or planning level." *United States v. Gaubert*, 499 U.S. 315, 325 (1991). "Day-to-day management . . . regularly requires judgment as to which of a range of permissible courses is the wisest." *Id.*

Defendant United States argues that the discretionary function exception applies to the claims against it in this case, relying on two cases in which courts have relied on that exception to dismiss claims based on unsafe mailbox location or maintenance. In *Riley*, the plaintiff alleged that he was in a car accident that was caused in part by mailboxes that obscured his view of traffic. 486 F.3d at 1031. The plaintiff sued the United States, alleging that the United States Postal Service ("USPS") had negligently placed, maintained, and failed to relocate the mailboxes. *Id.* The district court dismissed the case for lack of subject matter jurisdiction based on sovereign immunity, and the Eighth Circuit affirmed. *Id.* at 1031-34. Applying the two-prong *Berkovitz* test, the Eighth Circuit first found that the USPS's decision on where to locate the mailbox was discretionary, involving an element of judgment or choice. *Id.* at 1032-33. The court noted that "[n]o federal statute or rule mandated the USPS to locate the mailboxes at any particular place," and that the Postmaster had filed a declaration in the case indicating reasons for choosing the particular delivery route and mailbox location at issue. *Id.* The court rejected the plaintiff's argument that the USPS had no discretion and was bound by guidelines in the "Green Book" requiring that drivers have sufficient sight distance at intersections to make safe departures. *Id.* at 1033. The court noted that the Green Book provisions are guidelines and are not mandatory and concluded that the Green Book's own provisions "illustrate[d] that the USPS's decision on locating the mailboxes is discretionary." *Id.* at 1033-34. Turning to the second prong of the *Berkovitz* test, the court found that "the judgment of where to locate the mailboxes is of the kind that the discretionary function exception was designed to shield." *Id.* at 1034. It noted that 39 U.S.C. § 403(b) provides that "[i]t shall be the responsibility of the Postal

7

Service to maintain an efficient system of collection, sorting, and delivery of the mail nationwide . . . and to establish and maintain postal facilities of such character and in such locations, that postal patrons throughout the Nation will, consistent with reasonable economies of postal operations, have ready access to essential postal services." *Riley*, 486 F.3d at 1034 (quoting 39 U.S.C. § 403(b)). It noted that the United States had chosen the location at issue after "[b]alancing personnel, efficiency, economy, and safety." *Id.* Because it found both prongs were met, the court affirmed the district court's dismissal based on a lack of subject matter jurisdiction. *Id.* at 1034.

The Tenth Circuit reached the same conclusion in *Lopez v. United States*, 376 F.3d 1055 (10th Cir. 2004), another case in which the plaintiffs alleged that the placement of mailboxes obstructed their view and caused a car accident. The court found that the first prong was met, rejecting the plaintiffs' argument that New Mexico statutes required the mailboxes to be placed where they were and finding that the USPS was empowered to exercise its discretion to determine an appropriate location for the mailboxes. *Id.* at 1058-59. The court also found that the second prong was met, reasoning that "placement of the mailboxes was susceptible to such policy considerations as timeliness of delivery, efficiency of route, customer satisfaction, and patron and postman safety" and that "[p]lacement of mailboxes entails a calculated decision, based on the weighing of various costs and benefits." *Id.* at 1059-61. The court also noted that "[w]hether or not postal officials actually considered policy questions in this case is not legally relevant," because "[t]he dispositive question is whether the relocation of the mailboxes is 'susceptible to policy analysis.'" *Id.* at 1061 (quoting *Gaubert*, 499 U.S. at 325). Because the decision regarding the location of the mailboxes was a discretionary function within the meaning of the FTCA, the Court affirmed the judgment of the district court granting the defendant's motion to dismiss. *Id.*

Defendant United States argues that here, as in *Riley* and *Lopez*, the United States' decision to relocate mailboxes is protected by the discretionary function exception, and therefore sovereign immunity applies to Plaintiff's claims against the United States. Plaintiff does not attempt to distinguish *Riley* or *Lopez* from the instant case. Plaintiff does not dispute that the conduct at issue in his claims against the United States is the decision to relocate the mailboxes, nor does Plaintiff identify any statute, regulation, or policy that would have rendered the placement of the mailboxes nondiscretionary. Plaintiff also does not make any argument as to why the United States' placement of the mailboxes in the instant case is not conduct of the kind that the discretionary function exception was designed to shield. Plaintiff makes two arguments in opposition to Defendant's motion to dismiss: (1) that additional facts are necessary to determine whether the placement of the mailboxes was discretionary, and (2) that the Court must permit the case to proceed further to determine whether the United States exercised "due care" in making and/or implementing the decision to move the mailboxes. The Court finds both arguments unpersuasive.

Plaintiff's first argument is that because this case is in its infancy, "Plaintiff has not been able to carefully discover[] additional facts surrounding Defendants' decision of where to place the mailboxes at issue," and "it is possible that there is evidence that the placement of the mailboxes in question, for a number of reasons, was not discretionary." Pl.'s Resp., Doc. 23, at 3. This argument is without merit. "For a complaint to survive a motion to dismiss [based on the discretionary function exception], it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Gaubert,* 499 U.S. at 324-25. Plaintiff, who bears the burden of establishing jurisdiction, has not alleged the existence of any facts to suggest that the placement of the mailboxes, or any other conduct by the United States, was not discretionary. Moreover, as

9

Defendant points out, Plaintiff does not need discovery to identify a statute, regulation, or policy that would mandate placing mailboxes in a particular location, as all federal statutes and regulations are available online and the United States Postal Service publishes its manuals and handbooks on its website. In light of the holdings of *Lopez* and *Riley* that decisions regarding the placement of mailboxes by the United States are discretionary, the absence of any attempt to distinguish those cases by Plaintiff, and the the absence of any factual allegations from Plaintiff that would suggest that the United States' decisions with regard to mailbox placement were not discretionary, it is not necessary to allow Plaintiff discovery regarding the decision on mailbox placement.

Plaintiff's second argument is the Court should permit the case to go forward so that it can be determined whether the United States used "due care" in implementing the decision to move the mailboxes, because "once the government makes a policy decision protected by the discretionary function exception of the FTCA, the United States is not immune from suit if it does not implement that policy with due care." Pl.'s Resp., Doc. 23, at 2. (citing *Greene v. United States*, 745 F. Supp. 1486 (E.D. Mo. 1990)). Plaintiff argues that "[t]he court must permit this case to proceed further, to determine what care was taken to weigh the multiple factors and aspects of personnel, efficiency, economy, and safety, before disposing of any parties." Pl.'s Resp., Doc. 23, at 4. This argument appears to reflect a misunderstanding of the discretionary function exception. If the decision challenged in the plaintiff's claims falls within the discretionary function exception, there is no requirement that the decision be made with "due care." To the contrary, the Eighth Circuit has emphasized that under the relevant statute, "if qualifying discretion exists, the exception applies regardless of whether the government employee abuses that discretion." *Buckler v. United States*, 919 F.3d 1038, 1045 (8th Cir. 2019). *See also Layton v. United States*, 984 F.2d 1496, 1505 (8th Cir. 1993) (expressly rejecting the

10

argument that the government was obligated to exercise "due care" in deciding how thoroughly to warn contractors about dangers associated with felling trees, because such decisions were protected by the discretionary function exception; noting that "when the steps in the execution of a policy choice also require policy judgments, they too are protected by the discretionary function exception").

Consistent with the above, the approach consistently taken by courts addressing the discretionary function exception is to apply the two-prong *Berkovitz* test to the challenged decision, and dismiss the claims if the test is satisfied, without regard to whether the government exercised "due care" in making the decision at issue. *See, e.g.*, *Croyle*, 908 F.3d at 381-83 (affirming dismissal of claims that the United States negligently failed to supervise an employee or warn about his history of sexual abuse where the two-prong *Berkovitz* test was satisfied, without addressing negligence or due care; noting that although there might be disagreements about how the interests of safety, reputational interests, and confidentiality should be balanced, "the FTCA does not empower judges to second guess such decisions via tort action") (quotation marks omitted); *Riley*, 486 F.3d at 1031-34 (affirming dismissal of a claim that the USPS negligently placed, maintained, and failed to relocate mailboxes where the two-prong *Berkovitz* test was satisfied, without addressing due care or negligence); *Lopez*, 376 F.3d at 1057-60 (affirming dismissal of a claim that the USPS negligently placed, maintained, and failed to relocate mailboxes where the two-prong *Berkovitz* test was satisfied, without addressing due care or negligence; noting that "the question of negligence is irrelevant to the applicability of the discretionary function exception"); *Soni v. United States*, 739 F. Supp. 485, 488 (E.D. Mo. 1990) (granting summary judgment in favor of the United States on the plaintiff's claim that defendants designed, erected, and constructed a stair system with unsafe railings, a poor design, and

inadequate warning signs; finding the two-prong *Berkovitz* test satisfied and not addressing whether the United States exercised due care).

The Court agrees with Defendant United States that here, as in *Riley* and *Lopez*, the discretionary function exception applies to Plaintiff's claims against the United States. As in those cases, Plaintiff's claims here are based on the United States' decision to place mailboxes in an unsafe location. The first prong of the *Berkovitz* test is met, because Plaintiff does not allege that any statute, regulation, or other mandate required the United States to place the mailboxes in any particular location. The second prong is met, because under *Riley*, "the judgment of where to locate the mailboxes is of the kind that the discretionary function exception was designed to shield." *Id.* at 1034. *See also Lopez* 376 F.3d at 1059-60 (mailbox placement is "susceptible to such policy considerations as timeliness of delivery, efficiency of route, customer satisfaction, and patron and postman safety"). The FTCA does not permit the Court to second-guess the United States' discretionary decisions regarding such matters. Although the Court does not currently have any facts to indicate whether the government employees who made the decision to move the mailboxes actually considered the relevant policy factors in deciding to move the mailboxes, that is "not legally relevant," because it is clear that the "relocation of the mailboxes is susceptible to policy analysis." *See Lopez*, 376 F.3d at 1061.

Because the two-prong discretionary function test is satisfied, sovereign immunity applies to Plaintiff's claims against the United States, and those claims must be dismissed.

### B. The Remaining State-Law Claims

Because the Court is dismissing the claims over which it has original jurisdiction, the Court next considers whether to exercise supplemental jurisdiction over the remaining state-law claims. Here, the only basis asserted for original jurisdiction was the presence of the United States as a defendant, and all of the the claims against the United States have now been

dismissed. The court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(a). However, the district court may decline to exercise supplemental jurisdiction over state-law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

"A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011) (quoting *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)). The Court makes this decision after "[b]alancing factors such as judicial economy, convenience, fairness and comity." *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1249 (8th Cir. 2006). The Eighth Circuit has noted that in the usual case, these factors "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Barstad v. Murray Cty.*, 420 F.3d 880, 888 (8th Cir. 2005) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). This reflects the policy that the federal courts should "exercise judicial restraint and avoid state law issues whenever possible" and should "provide great deference and comity to state court forums to decide issues involving state law questions." *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990). Here, after consideration of the relevant factors, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. This case is in its infancy, and the only remaining claims involve questions of state law that would be better determined by the Missouri state courts. Accordingly, Plaintiff's state law claims will be remanded to state court. *See Lindsey v. Dillard's, Inc.*, 306 F.3d 596 (8th Cir. 2002) (finding remand proper in removed case based on district court's discretionary decision not to exercise supplemental jurisdiction).

**IV.   CONCLUSION**

For the reasons stated above,

**IT IS HEREBY ORDERED** that Plaintiff's claims against Defendant United States of America are **DISMISSED**, with prejudice.

**IT IS FURTHER ORDERED** that this case is **REMANDED** to the Circuit Court of St. Charles County, Missouri for further proceedings on Plaintiff's remaining claims.

**IT IS FURTHER ORDERED** that all other pending motions in this case are **DENIED**, without prejudice.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of July, 2019.